IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Elizabeth A. Murphy, | ) | C/A No.: 1:12-2117-DCN-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

I.    Relevant Background

A.    Procedural History

On January 16, 2009, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on April 1, 2005.  Tr. at 129, 126.  Her applications were denied initially and upon reconsideration.  Tr. at 53–54, 57–58.  On July 15, 2010, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Edward T. Morriss.  Tr. at 30–50 (Hr'g Tr.).  The ALJ issued an unfavorable decision on August 26, 2010, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 13–29.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on July 27, 2012.  [Entry # 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 35 years old at the time of the hearing.  Tr. at 33.  She completed high school and had nursing-related schooling.  Tr. at 33–34, 164.  Her past relevant work ("PRW") was as a home health care nurse/nursing aide.  Tr. at 24, 34–35.  She alleges she has been unable to work since April 1, 2005.  Tr. at 129, 126.

2.    Medical History

Plaintiff alleges disability beginning in April 2005, but the first record of any mental health treatment is in a "Mobile Crisis" treatment note from March 28, 2006,

when Plaintiff reported depression and anxiety due to "a lot of emotional stuff from childhood." Tr. at 354. She reported working part time as a caregiver. *Id*.

On August 3, 2006, doctors at the Medical University of South Carolina ("MUSC") referred Plaintiff to Charleston Mental Health Center ("Charleston Mental Health") for mental health treatment with a diagnosis of Post-Traumatic Stress Disorder ("PTSD"). Tr. at 215. She had been in a drug study at MUSC in May–August 2006 with Zoloft and Risperdal medications. Tr. at 218. Plaintiff described depression with no symptoms of psychosis, and complained of headaches and a history of asthma with no reported complications. Tr. at 228. Plaintiff was oriented times four, had coherent and appropriate thought, and had appropriate speech patterns. Tr. at 229. She was tearful, but cooperative, reported attending school through tenth grade, was unable to concentrate, and had average intellectual functioning. *Id*. She reported cooking, playing bingo, working part time as a nursing caretaker, and having good activities of daily living. Tr. at 230.

On August 10, 2006, a mental health psychiatrist diagnosed Plaintiff with Major Depressive Disorder ("MDD"). Tr. at 218. Plaintiff reported working part time as a nursery caretaker. Tr. at 230. She was assessed with a Global Assessment of Functioning ("GAF")[2] score of 51. Tr. at 231.

On August 29, 2006, the psychiatrist noted that Plaintiff had "good results" with Trazodone and prescribed Prozac. Tr. at 217.

---

[2] "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 597 n. 1 (9th Cir. 1999).

On September 29, 2006, Plaintiff reported having periods of tearfulness and poor self-esteem fueled by derogatory comments by her boyfriend, but stated that she was feeling calmer and less depressed with the medications.  Tr. at 217.

On November 3, 2006, Plaintiff failed to appear for her psychiatric appointment. Tr. at 222.  On November 8, 2006, Plaintiff reported recurring depressive symptoms.  *Id.* Plaintiff's psychiatrist adjusted her medications and directed her to follow up in a month. *Id.*

On February 9, 2007, Plaintiff reported continued stress at home due to her boyfriend's continued verbal abuse and her fear of violence from him.  Tr. at 221. Plaintiff was prescribed Klonopin for anxiety related to stress at home.  *Id.*  On February 26, 2007, the therapist noted that Plaintiff had been compliant with her treatment plan and was "doing well on becoming more confident."  Tr. at 226.

On March 8, 2007, Plaintiff failed to appear for her psychiatric appointment.  Tr. at 221.

Plaintiff returned to Charleston Mental Health for treatment on February 9, 2009. Tr. at 233–35.  At the initial assessment, Plaintiff reported that she had been incarcerated for the prior two years.  Tr. at 239.  She reported depression, insomnia, and auditory hallucinations.  Tr. at 238–39.  Plaintiff was diagnosed with recurrent and moderate MDD and PTSD, with a GAF score of 51.  Tr. at 239.

Plaintiff saw her psychiatrist on March 4, 2009, and on March 20, 2009.  Tr. at 302–03.  Her medications included Prozac, Klonopin, Lexapro, Albuterol inhaler, and

Proventil inhaler. She reported taking her medications regularly, but her GAF score had worsened to 40. Tr. at 300–01.

On March 31, 2009, Mark A. McClain, Ph.D., conducted a consultative psychological examination of Plaintiff in connection with her disability claims. Tr. at 262–66. Plaintiff reported that she last worked as a home health aide in 2007, but stopped working because "she 'got into trouble' on her job." Tr. at 262. Plaintiff reported hearing a voice calling her name several times per week. Tr. at 263. She also told Dr. McClain that her "baby doll" would "talk to her and tell her to 'please don't let them take me away.'" Tr. at 263. Dr. McClain found that "it was difficult to determine the validity of her report. It appeared somewhat overly dramatic and possibly an attempt to over report her experience of psychopathology." Tr. at 265. He found it "possible" that she was experiencing psychotic thought processes and opined that her treating doctors should further assess her to rule out a psychotic thought disorder. Tr. at 265. Dr. McClain diagnosed her with dysthymic disorder and generalized anxiety disorder, and assessed her with a GAF score of 60. Tr. at 265. Plaintiff stated that she was unable to work due to her fear of being around people, but Dr. McClain opined that she was an appropriate candidate for vocational training. Tr. at 265.

Plaintiff reported hallucinations to her psychiatrist on April 20, 2009. Tr. at 298. They discussed Geodon, an antipsychotic medication, although there is no evidence that Plaintiff began taking Geodon. Tr. at 298–99. Plaintiff also stated that she had been congested due to her asthma, but had recently been prescribed a new medication. Tr. at

298.  Plaintiff reported taking her medications regularly, but complained they were causing nausea and headaches.  Tr. at 298.

On April 27, 2009, state agency psychological consultant Michael Neboschick, Ph.D., reviewed the record and opined that Plaintiff's mental impairments did not meet or medically equal a listing.  Tr. at 267–76.  He opined she would have moderate limitations in accepting instructions, responding appropriately to criticism from supervisors, responding appropriately to changes in the work setting, dealing with the general public, and in completing a normal workday/week without interruption.  Tr. at 282.  He concluded that Plaintiff would do best in quiet settings that did not require public interaction, but that she had mental capabilities consistent with the full range of simple, unskilled work.  Tr. at 283.

On June 1, 2009, Harriett R. Steinert, M.D., conducted a medical examination of Plaintiff in connection with her social security claims.  Tr. at 285–86.  Plaintiff reported having hallucinations "all of the time."  Tr. at 285.  She also described lower back pain, but admitted that she had never been treated for the pain or had an MRI.  Tr. at 285.  Upon examination, Dr. Steinert found mild tenderness in her lumbar spine, but full range of motion in the cervical spine, full range of motion in all joints, normal gait, and normal strength in all extremities.  Tr. at 285–86.  Plaintiff's straight leg raise was negative for back pain.  Tr. at 286.  Dr. Steinert found that Plaintiff's asthma was "under good control."  Tr. at 285.  She diagnosed Plaintiff with depression, PTSD, and chronic lumbar and thoracic spine pain of uncertain etiology.  Tr. at 286.  A June 1, 2009, x-ray of

Plaintiff's thoracic spine showed mild midthoracic dextroscoliosis and diffuse mild disc narrowing, with impression of mild spondylosis. Tr. at 287.

Plaintiff returned to Charleston Mental Health on June 5, 2009, reporting hallucinations, anxiety, and depression. Tr. at 296. The psychiatrist noted that Plaintiff was not taking her medication regularly and had been taking medication (Adderall) from a relative that was not prescribed to her. *Id.* She was diagnosed with MDD with psychotic features and PTSD. Tr. at 297. The treatment records noted Plaintiff was "recently released from prison, extremely symptomatic from PTSD at this time, financial stressors, caring for elderly GM, not working and wants to return." *Id.* Her GAF score was 50. *Id.*

On June 18, 2009, state medical consultant Mary Lang, M.D., reviewed Plaintiff's file and completed a physical residual functional capacity ("RFC") assessment. Tr. at 306–13. She opined that Plaintiff had the capability to lift 50 pounds occasionally and 25 pounds frequently, could stand/walk/sit six of eight hours per day, was unlimited in pushing/pulling, and had no postural/manipulative/communicative/environmental limitations. Tr. at 308–10. Dr. Lang referenced Dr. Steinert's consultative examination. Tr. at 311–13.

In July 2009, Plaintiff's psychiatrist noted that she was not taking her medications regularly and she was a "no-show" for an appointment. Tr. at 345.

On July 21, 2009, state psychological consultant Holly Hadley, PsyD, reviewed Plaintiff's file and completed a psychiatric review technique. Tr. at 314–27. She assessed mental diagnoses of affective disorders and anxiety-related disorders and

7

referenced "Dysthymic D/O per CE; MDD w/ psychotic features per MHC."  Tr. at 314, 317.  Dr. Hadley found Plaintiff would have moderate limitations in social functioning and interacting with the general public; maintaining concentration, persistence, or pace; completing a normal workday or workweek without interruptions or unreasonable rest periods from her mental conditions; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting.  Tr. at 324, 328–29.  Dr. Hadley opined Plaintiff was capable of simple, unskilled kinds of work activity and that she would function best in quiet settings away from stressors due to her anxiety.  Tr. at 330.  Dr. Hadley opined Plaintiff would work better in routine, repetitive workplace rules and job requirements compared to those that change.  *Id.*

On January 21, 2010, Plaintiff returned to Charleston Mental Health.  The treatment notes are identical to those from her last visit on June 5, 2009: "recently released from prison, extremely symptomatic from PTSD at this time, financial stressors, caring for elderly GM, not working and wants to return."  Tr. at 241.  It was noted that Plaintiff had a history of sexual and domestic abuse.  *Id.*  Her diagnoses were recurrent and severe MDD and PTSD.  *Id.*  Her GAF score was 40.  Tr. at 240–41.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on July 15, 2010, Plaintiff initially had difficulty remembering her last job, but with prompting, she explained that she worked part-time for a company

8

called Family Care for a few months in 2007, attending to persons in their homes.  Tr. at 34.  She said she had done similar work for the previous fifteen years.  Tr. at 35.  Plaintiff testified that she was no longer able to work because of her mental depression, including flashbacks.  Tr. at 36.  She said that the memory of abuse "slows my life down, takes everything away from me."  *Id.*  Asked about good days versus bad days, she responded that she can "probably break a smile like twice a week," but most days she stays in her room with the door shut.  *Id.*  She testified she sometimes needed reminders to take care of personal hygiene, and her aunt helps her out a lot.  *Id.*

Plaintiff described "spaz spells," similar to panic attacks, where she becomes nervous, scared, and afraid of making mistakes.  Tr. at 38.  She stated that she has these episodes about eight to nine times a month and that they last ten to fifteen minutes.  Tr. at 39.  She said they may be brought on by memories of the past or by other stress.  *Id.*  For example, an attack was triggered the morning of the hearing when she was unable to find the hearing office.  *Id.*  She testified that she tries to make them go away by rocking herself and telling herself everything will be okay.  *Id.*

Plaintiff testified that she had PTSD as a result of sexual abuse as a child.  Tr. at 40.  She said she does not want to be around people, and does not really have a life.  Tr. at 41.  She said that other than her appointments with mental health and checking her mailbox (but just every other day), she does not leave her house.  Tr. at 40–41.  She said she usually stays in her room the whole day.  Tr. at 41.  She stated that the television may be on, but she will not be watching it.  *Id.*  She said she just lies in bed and looks at the walls.  *Id.*  Plaintiff also testified to having auditory hallucinations.  *Id.*  For example, the

weekend prior to the hearing, she thought she heard somebody calling her name and went to the door, but no one was there.  *Id.*

Plaintiff testified that back problems also kept her from working.  Tr. at 37.  She said she has had the pain for several years, with pain starting in her neck and going down.  *Id.*  She testified that she is not able to sit for very long without having to lie down and is not able to walk on some days.  *Id.*  She stated that the pain is constant and made worse by walking or bending down.  *Id.*

Plaintiff testified that her typical day is stressful, frustrating, depressing, and leaves her wanting to cry.  Tr. at 42.  She said she is able to sit about 10 to 15 minutes and stand for about the same time.  Tr. at 43.  She stated she can walk for about a block, but cannot bend, stoop, or squat.  Tr. at 44.  She estimated that she could carry one gallon of milk, but stated she could not carry two gallons.  *Id.*

Plaintiff testified that her last job had been a part-time position in 2007 that she left because she was unable to lift a client.  Tr. at 45–46.  She stated that the main reason she was unable to work was that she was unable to stay focused and was always depressed and crying.  Tr. at 48.  When asked how she had been able to work in 2005 and 2006, she stated that she had been able to adapt to the Alzheimer's patients she was working with and that she was able to do it because she "basically was trying to take [her]self away from all of [her] problems."  *Id.*  Plaintiff testified that her history of sexual abuse had been causing her problems since 2002 and that one of her prior abusers had threatened her in 2007.  Tr. at 48–49.

b.    Vocational Expert Testimony

There was no Vocational Expert ("VE") testimony at the hearing.

2.    The ALJ's Findings

In his decision of August 26, 2010, the ALJ made the following findings of fact

and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.
2.    The claimant has not engaged in substantial gainful activity since April 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).
3.    The claimant has the following severe impairments: depression and mild spondylosis (20 CFR 404.1520(c) and 416.920(c)).
4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967 (c) except that the claimant is limited to simple, routine, repetitive tasks with limited social interaction.
6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7.    The claimant was born on October 19, 1974 and was 30 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
9.    Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
11.    The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 18–25.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    The ALJ failed to find that Plaintiff's PTSD, anxiety, and asthma were severe impairments;

2)    The ALJ's RFC assessment did not include all of Plaintiff's mental and physical limitations; and

3)    The ALJ improperly relied solely upon the Medical-Vocational Guidelines ("Grids") to deny Plaintiff's claim.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983)

(discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b), Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Severe Impairments

Plaintiff argues that the ALJ erred in finding that her PTSD, anxiety, and asthma were non-severe impairments.  [Entry #14 at 10–12].  The Commissioner responds that any error in this regard is harmless because the ALJ properly considered the effects of all of Plaintiff's impairments in assessing her RFC.  [Entry #15 at 9–10].

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  A non-severe impairment is defined as one that "does not significantly limit [a claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) 416.921(a). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]" 20 C.F.R. §§ 404.1508, 416.908. It is the claimant's burden to prove that she suffers from a medically-severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 145 n.5 (1987).

Here, the ALJ found that Plaintiff had the severe impairments of depression and mild spondylosis. Tr. at 18. In setting forth this finding, he stated, "The above listed impairments cause the claimant more than minimal functional limitations." *Id.* At step two, he did not address any of Plaintiff's other alleged impairments or provide an explanation for why he concluded such impairments were non-severe.

As an initial matter, the undersigned finds that Plaintiff has not borne her burden of proving that asthma was a severe impairment. While the record notes that Plaintiff has a history of asthma, it also documents that her asthma was "under good control." Tr. at 228, 285. The record contains no evidence of any functional limitations related to her asthma. Therefore, the undersigned recommends a finding that the ALJ did not err in finding asthma to be a non-severe impairment and that any error in omitting a discussion of asthma at step two was harmless.

Unlike Plaintiff's asthma, the medical records contain numerous references to Plaintiff's PTSD and anxiety, yet the ALJ provided no discussion of these impairments at

16

step two. Notably, Plaintiff was diagnosed with PTSD at MUSC on August 3, 2006, and was referred to Charleston Mental Health for treatment. Tr. at 215. Dr. Steiner also diagnosed Plaintiff with PTSD on June 1, 2009. Tr. at 286. Plaintiff reported anxiety as early as March 28, 2006 (Tr. at 354), and she was ultimately prescribed anti-anxiety medication (Tr. at 221). Consulting examiner Dr. McClain diagnosed Plaintiff with a generalized anxiety disorder (Tr. at 265), as did state-agency consultant Dr. Hadley, who opined that Plaintiff would function best in quiet settings away from stressors due to her anxiety (Tr. at 314, 330). In addition, records from Charleston Mental Health on June 5, 2009, and January 21, 2010, document Plaintiff's reported anxiety and note that she was "extremely symptomatic from PTSD at this time." Tr. at 240–41, 296–97. Because the ALJ failed to address the record evidence related to Plaintiff's anxiety and PTSD, the undersigned is unable to conclude that his step two findings as to those impairments are supported by substantial evidence.

The Commissioner contends that any error by the ALJ is harmless because the ALJ considered Plaintiff's severe and non-severe impairments in determining her RFC. [Entry #25 at 9–11]. The undersigned agrees that an ALJ's failure to find an impairment severe at step two may be harmless where he considers that impairment at subsequent steps. *See Washington v. Astrue*, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (collecting cases). Here, however, the ALJ did not adequately address Plaintiff's anxiety and PTSD at subsequent steps. The only reference to these impairments is included within the ALJ's credibility determination. There, the ALJ stated, "The claimant testified that she has anxiety, and has experienced panic attacks since 2000 related to her PTSD.

17

However, at a consultative examination on March 31, 2009, the claimant did not report that she was experiencing any significant anxiety symptoms associated with past traumatic events." Tr. at 23. The ALJ's finding omits reference to Plaintiff's diagnoses of anxiety and PTSD and, in particular, overlooks the records from Charleston Mental Health on June 5, 2009, and January 21, 2010, during which Plaintiff reported anxiety, and it was noted that she was "extremely symptomatic from PTSD at this time." Tr. at 240–41, 296–97. Thus, the undersigned does not recommend finding that the ALJ's error at step two was harmless.

Based on the foregoing, the undersigned is constrained to recommend that the district judge remand this case and direct the ALJ to properly consider the record evidence in determining whether Plaintiff's anxiety and PTSD are severe impairments.

2.     Remaining Allegations of Error

Plaintiff also alleges that the ALJ conducted a faulty RFC assessment and erroneously relied on the Grids to establish that she could perform other work existing in the national economy. In light of the ALJ's failure to adequately address Plaintiff's anxiety and PTSD at any stage of the decision, the undersigned recommends a finding that the ALJ's RFC determination was necessarily flawed and that his reliance on the Grids in the face of potential non-exertional limitations was likewise in error.[5] The

---

[5] When a claimant suffers from a nonexertional impairment that restricts her ability to perform work of which she is exertionally capable, the ALJ may not rely exclusively on the Grids to establish that the claimant could perform other work that exists in the national economy. *See Walker*, 889 F.2d at 49; *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) ("When nonexertional limitations . . . occur in conjunction with exertional limitations, the guidelines are not to be treated as conclusive." (citing *Roberts v.*

undersigned further recommends that, on remand, the ALJ be directed to consider all alleged impairments in assessing Plaintiff's RFC.  If the ALJ finds that non-exertional limitations affect Plaintiff's RFC to perform work of which she is exertionally capable, he should obtain the testimony of a VE regarding Plaintiff's ability to perform jobs existing in the national economy.  *See Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984).

To the extent Plaintiff's remaining allegations of error assert that the ALJ conducted a faulty credibility analysis, and without offering a recommendation on this issue, the undersigned notes that the ALJ provided numerous reasons for discounting Plaintiff's credibility that appear to be in accordance with SSR 96-7p.  The undersigned further notes that the recommendations in this matter are in no way intended to suggest that the ALJ should award benefits on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law.  Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence.  Therefore, the undersigned recommends, pursuant to

---

*Schweiker*, 667 F.2d 1143, 1145 (4th Cir. 1981); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d)–(e)(2); 20 C.F.R. § 404.1569)); *Hammond v. Heckler*, 765 F.2d 424, 425– 26 (4th Cir. 1985) ("[T]he grids inadequately describe[ ] the claimant who suffers a disability present in the absence of physical exertion."); 20 C.F.R. § 416.969a(d).  Rather, in those circumstances, the Commissioner has the burden to prove by expert vocational testimony—not exclusive reliance on the Grids—that, despite the claimant's combination of exertional and nonexertional impairments, specific jobs exist in the national economy that the claimant can perform. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983).

the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

     IT IS SO RECOMMENDED.

*Shiva V. Hodges*

November 6, 2013               Shiva V. Hodges
Columbia, South Carolina      United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).